UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**IPA ACQUISITIONS, INC.,**

                                         **Plaintiff,**

                                -v-                                                          **6:12-CV-499 (NAM/DEP)**

**INSURANCE COMPANY OF THE AMERICAS,
FREDERICK GLENN CARROLL, ROBERT GERALD
MORLEY, JOHN CHRISTOPHER IORILLO, DONALD
ROBERT ANDERSON, GARY THORNLEY HIRST,**

                                     **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Kernan & Kernan, P.C.
Leighton R. Burns, Esq., of counsel
185 Genesee Street, Suite 1401
Utica, New York 13501
Attorney for Plaintiff

Felt Evans, LLP
Kenneth Bobrow, Esq., of counsel
4-6 North Park Row
Clinton, New York 13323-1536
and
Boies, Schiller & Flexner LLP
David W. Ata, Esq., of counsel
575 Lexington Avenue, 7th Floor
New York, New York 10022
Attorneys for Defendants Insurance Company of the Americas, Frederick Glenn Carroll, Robert Gerald
Morley, John Christopher Iorillo, and Gary Thornley Hirst

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

      Plaintiff IPA Acquisitions, Inc. ("plaintiff" or "IPA") commenced this action in New York

State Supreme Court, Oneida County on December 13, 2010. Defendants moved to dismiss the

complaint on January 31, 2012, and plaintiff filed an amended complaint on February 17, 2012. Defendants removed the action to this Court on March 19, 2012.

Defendants Insurance Company of the Americas ("ICA"), Frederick Glenn Carroll, Robert Gerald Morley, John Christopher Iorillo, and Gary Thornley Hirst ("individual defendants") move (Dkt. No. 25) to dismiss the second amended complaint (Dkt. No. 24).[1] IPA cross-moves (Dkt. No. 34) for an extension of time to file a civil RICO statement pursuant to General Order #14. As set forth below, the Court grants the motion (Dkt. No. 25) to dismiss the second amended complaint in its entirety, and denies the cross motion to file a late RICO statement (Dkt. No. 34).

## SECOND AMENDED COMPLAINT

The second amended complaint (Dkt. No. 24) claims that defendant ICA is a property and casualty insurance corporation, and that the individual defendants are ICA directors and officers. The second amended complaint alleges:[2]

> 9. Effective November 22, 2005 IPA entered into a certain trust agreement ("Trust l") with Employee Leasing Solutions, Inc. ("ELS") and ICA under which ELS as insured and IPA as grantor funded the trust by depositing funds $5,075,006.00 to be held by HSBC Bank in New York as trustee pursuant to the terms and conditions of a trust agreement for the sole purpose of providing collateral insurance for the deductible retention of ELS to fulfill its obligations to reimburse ICA for paid losses and allocate loss adjustments expenses arising under the deductible obligations of ELS as insured under a large deductible endorsement policy of workers' compensation insurance issued by ICA as insurer to ELS as insured.
>
> 10. Effective December 16, 2005, ICA, as insurer, and ELS as insured, entered into a certain trust agreement ("Trust 2") under which ELS as insured and grantor funded the trust by depositing funds $12,564,225.34 to be held by Gold Bank as trustee pursuant to the terms and conditions of a trust agreement

---

[1] It appears that named defendant Donald Robert Anderson has not been served with process.

[2] The Court quotes directly from the second amended complaint without noting or correcting errors.

for the sole purpose of providing collateral insurance for the deductible retention of ELS to fulfill its obligations to reimburse ICA for paid losses and allocate loss adjustments expenses arising under the deductible obligations of ELS as insured under a large deductible endorsement policy of worker's compensation insurance issued by ICA as insurer to ELS as insured.

11. Effective August 29, 2006, ICA entered into a certain trust agreement ("Trust 3") with ELS under which ELS as insured and grantor funded the trust by depositing funds $5,034,086.83 to be held by Wachovia Bank as trustee pursuant to the terms and conditions of a trust agreement for the sole purpose of providing collateral insurance for the deductible retention of ELS to fulfill its obligations to reimburse ICA for paid losses and allocate loss adjustments expenses arising under the deductible obligations of ELS as insured under a large deductible endorsement policy of worker's compensation insurance issued by ICA as insurer to ELS as insured.

12. By a series of agreements and amendments IPA succeeded to all of the rights of ELS as the grantor ("Grantor") in place of ELS making IPA the sole party entitled to the excess trust funds when they exceed 110% of the amount needed to fund obligations under the policies acquiring all right, title and interest in the excess trust funds of Trusts 1, 2 and 3 from ELS. HSBC Bank in New York became sole custodial trustee of these trusts. Any funds in trust which exceed 110% of the actual amount needed to fund ELS's obligations under the policies belong to IPA. Under the trusts, IPA was given standing to enforce the terms of the trusts. Under the trusts ICA had a continuing fiduciary obligation to utilize the trust funds solely for the purpose of providing collateral for ELS's obligations to reimburse ICA for unreimbursed deductible obligation with the balance of the excess trust funds to be paid to IPA because all funds in excess of the 110% belong to IPA.

13. Trusts 1, 2, and 3 were continued with HSBC Bank in New York on March 9, 2007, February 28, 2007 and March 5, 2007, respectively. Trusts 1, 2 and 3, set forth at paragraphs 9, 10 and 11 hereof have been amalgamated and referred to hereunder as the "Trust". The Trust and the Policies were and are an insurance contract in which IPA has standing to enforce and audit under the terms of the Trust which is required to be construed in accordance with the laws of New York and any action required regarding the Trust must be brought in the State of New York....

14. Under the policies and the Trust virtually all claims, obligations and deductible obligations have been paid, settled, compromised and released leaving in excess of $5 million as excess trust funds no longer needing to be retained for the payment of obligations under either the Trust or the policies and are required to be paid to IPA.

15. Under the Trust ICA as guardian and steward of the funds in trust have obligations to manage and preserve the trust funds and to *inter alia* to pay to Plaintiff IPA all excess funds and any amounts that would be payable to ELS as original Grantor under the Trust, with ICA and its officers and directors as nominal grantor all are charged with the fiduciary duties and responsibilities to continue to protect and preserve trust assets, and to manage the Trust as a New York Regulation 114 (11 NYCRR § 126.2 et seq.) insurance trust contract and are charged with personal liability requiring them to indemnify the Trust for any breach of their duties resulting in actionable loss or damage to the Trust.

16. Under the terms of the Trust, IPA has full rights of audit and related inquiry relative to the Trust with regard to all matters involving administration of the Trust and Trust funds and has standing to enforce the terms of the Trust Agreement.

17. Since May 2009 the Personal Defendants ... have cut IPA and ELS off and refused to provide bank statements issued by HSBC Bank in New York and Personal Defendants have hid and concealed from ICA all banking transactions with relation to the Trust.

18. ICA has maintained and continues to maintain assets dedicated by law to be used only for specific insurance purposes with HSBC Bank in New York ("ICA Custody") in addition to funds of the Trust.

19. The Trust mandates that only assets meeting the requirements and conforming to New York Regulation 114 (11 N.Y.C.R.R. §126.2 et seq. qualify to be held in Trust.

20. Assets non-qualifying for a 114 trust are deemed worthless ("Worthless").

21. The Personal Defendants dishonestly and secretly misappropriated assets of both the Trust and ICA Custody causing ICA to divert and convert such assets for the personal use of the Personal Defendants as follows. In 2009 ICA was in control of the assets of the Trust and ICA Custody. Beginning in 2009 in a series of transactions, the Personal Defendants caused ICA to transfer to themselves $1.5 million from ICA Custody assets for Worthless shares of a company by the name of Vensure. ICA then held the Vensure shares directly in its assets but not in ICA Custody at HSBC Bank in New York. Then ICA caused the Trust to buy $1.53 million of M2 Global stock (a corporation incorporated under the laws of the foreign nations of Antigua and Barbuda) which has no market value and was Worthless. The M2 Global Shares were then delivered by the Trust to ICA Custody in exchange for the Worthless shares of Vensure plus $30,000.00 in an effort to cover up the

conversion of ICA Custody assets. HSBC Bank in New York refused to accept the M2 Global securities and returned them because such securities issued in the foreign nations of Antigua and Barbuda are not permitted to be holdings in the ICA Custody and Personal Defendants caused the Trust to transfer funds of $3 million directly to Vensure for no consideration in exchange for Worthless Vensure shares. In the foregoing series of transactions, the Personal Defendants willfully and illegally converted a total of $4.5 million from the Trust to their own personal use with the intent to deprive IPA and ELS of their property. There are additional ongoing activities of Personal Defendants regarding management of ICA and its use of Trust Funds which have left ICA in a state and condition unable to function resulting in significant additional consequential damage upward of $30 million.

22. At all times mentioned herein, Personal Defendants are or were owners, directors or officers directly or indirectly in control of Venture.

23. All of the Defendants' actions heretofore outlined constitute a plan and scheme of fraud to permit Defendants to acquire control of ICA and then convert its Custody Assets and Trust Assets contrary to their dedicated purposes and for the personal use and benefit of Personal Defendants and assessory Galanis, beginning on December 1, 2008 and continuing to the present ("Active Fraud Period").

24. During the Active Fraud Period, the Personal Defendants have caused ICA to wrongfully convert and waste at least $4.5 million of Trust assets to their own self interests, including, but not limited to the illegal conversion of trust funds held by the Trust in HSBC Bank in the State of New York.

25. During the Active Fraud Period, the scheme of Personal Defendants and assessory Galanis resulted in conversion and waste of valuable ICA Custody assets and Trust assets by substituting Worthless securities in exchange for the ICA Custody and Trust funds which Personal Defendants took for themselves.

26. During the Active Fraud Period, in furtherance of Defendants' plan and scheme to acquire ICA Custody and Trust assets, the Personal Defendants perpetrated and concealed their fraud by preventing IPA and others with interest in assets access to information about the Trust under the control of ICA. Defendants also failed and refused to respond to requests of IPA for audits and disclosures which Defendants had agreed under the Trusts and as they were bound to do, yet Personal Defendants have continued throughout the Active Fraud Period steadfastly refusing to provide even the most basic information on the assets and operation of the Trust and use of its funds.

In the first cause of action, headed "Fraud and Breach of Fiduciary Duty Through Diversion of Trust Assets," plaintiff claims that it is entitled to receive all Trust funds payable to grantor; that defendants owe IPA a fiduciary duty "to preserve, manage and prudently administer all of the investment of funds and property in the Trust in accordance with the intent, uses and purposes of the Trust"; and that defendants "caused to be transferred assets and excess trust funds from Trust and ICA Custody in excess of $4.5 million all of which rightfully belong to IPA for use contrary to the dedicated purposes of the Trust and ICA Custody assets and replaced the trust funds with Worthless paper securities[.]"

The second cause of action for fraud under section 349 of the New York General Business Law alleges that the individual defendants falsified records of ICA and the Trust in order to conceal the wrongful taking and conversion of assets of ICA Custody and the Trust, and that they participated in and conspired to participate in the wrongful transfer with knowledge that the business records of ICA were being falsified by the individual defendants. IPA claims that defendants intended to and did deceive it and that it relied upon defendants' material misrepresentations.

The third cause of action is for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c),(d). IPA alleges that the individual defendants conducted and participated in conducting the affairs of ICA through insurance fraud, mail fraud, and wire fraud, *see* 18 U.S.C. § 1341; that they transferred ICA's money and assets in interstate commerce "knowing the funds so obtained had been converted, stolen and taken by fraud and/or falsified records"; and that their "repeated commission of insurance, mail, and wire fraud ... constitute[s] a pattern of racketeering activity" affecting interstate or foreign commerce. Thus,

plaintiff claims, the individual defendants conducted or participated in conducting the affairs of defendant ICA, an enterprise, through a pattern of racketeering activity, 18 U.S.C. § 1962(c), and conspired to do so, 18 U.S.C. § 1962(d).

The fourth cause of action, for aiding and abetting fraud, claims:

> ... [T]he Personal Defendants by misrepresenting the true nature of the withdrawal of funds from the Trust and ICA Custody concealed their illegal fraudulent acts and schemes by defrauding of plaintiff through active participation, aid, encouragement or ratification of the conduct of ICA which they did having known of that fraud or if they did not know of the fraud it was because of their gross dereliction of their duties and responsibilities as officers and directors of ICA.

The fourth cause of action avers that each individual defendant "acted in concert and deliberately aided and abetted each other in the conduct of the illegal activities and schemes described above."

The fifth cause of action for an accounting alleges that defendants "violated their duties with regard to the administration of the Trust and ICA Custody and are legally obligated to account for all the funds held in trust"; that defendants as fiduciaries are required to account to plaintiff for the conversion of any such funds and should be compelled to restore all those funds which rightfully belong to the plaintiff; and that the foregoing diversion of Trust assets and Custody assets "has occurred by and large because IPA has been deprived of its contractual rights to audit the books and accounts of the Trust and activities of ICA related thereto."

Plaintiff seeks damages in the sum of $5 million on the first, second, and fourth causes of action, and treble damages in the sum of $15 million on the third cause of action. In the fifth cause of action, plaintiff seeks a "mandatory injunction directed to all the defendants to restore all converted funds to the Trust and IPA as due Grantor and further permitting IPA access to the books and records of the Trust and ICA with regard to the Trust funds[.]"

**DISCUSSION**

**Pleading Standards on Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (internal quotation marks omitted)). To survive a dismissal motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court must accept as true all the factual allegations in the complaint, *id.*, that requirement is inapplicable to legal conclusions. *See Iqbal*, 556 U.S. at 678.

Where a complaint asserts claims of fraud, the circumstances that allegedly constitute fraud must be pleaded "with particularity." Fed. R. Civ. P. 9(b); *see Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014). "The elements of common law fraud under New York law are: '(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff.'" *DeAngelis v. Corzine*, 2014 WL 1695186, *4 (S.D.N.Y. Apr. 16, 2014) (citations and quotation marks omitted). Because fraud claims must be pleaded with particularity, see Fed.R.Civ.P. 9(b), a plaintiff alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (citations omitted).  Where facts are "peculiarly within the opposing party's knowledge," fraud allegations may be based on information and belief, but the complaint must "adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).

**Personal Jurisdiction**

The Court undisputedly has jurisdiction over defendant ICA, which, by virtue of its office located in Oriskany, New York, is present in this state.  *See* N.Y.C.P.L.R. § 301.  Defendants contend that plaintiff has not made a *prima facie* showing of "long-arm" personal jurisdiction over the individual defendants, none of whom reside in New York State.  *See* N.Y.C.P.L.R. 302(a).  Although courts "traditionally treat personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013).  Where, as here, the case involves multiple defendants, over one of which the Court indisputably has personal jurisdiction, and all of whom collectively challenge the legal sufficiency of the plaintiff's claims, the Court "may address first the facial challenge to the underlying cause of action and, if [it] dismiss[es] the claim in its entirety, decline to address the personal jurisdictional claims made by some defendants." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012).  Because the second amended complaint does not plead any basis to distinguish among the defendants, and the dismissal motion clearly must be decided against plaintiff, the Court finds it particularly appropriate to address the

facial challenge to the second amended complaint rather than addressing the individual defendants' challenge to personal jurisdiction.

**First Cause of Action**

The first cause of action is headed: "Fraud Breach of Fiduciary Duty Through Diversion of Trust Assets." Plaintiff claims that it is entitled to receive all Trust funds and that ICA owed it a fiduciary duty "to preserve, manage and prudently administer all of the investment of funds and property in the Trust in accordance with the intent, uses and purposes of the Trust." It further alleges:

> During the Active Fraud Period in violation of their fiduciary duty, the Defendants caused to be transferred assets and excess trust funds from Trust and ICA Custody in excess of $4.5 million all of which rightfully belong to IPA for use contrary to the dedicated purposes of the Trust and ICA Custody assets and replaced the trust funds with Worthless paper securities, all of which constitutes fraud, improper illegal dispersal, use, depletion, conversion and/or loss of funds and Trust property.... Under the terms of the Trust, IPA was and still is entitled to the excess trust funds so transferred and converted by Defendants.

To the extent that the first cause of action depends on a breach of fiduciary duty that involves fraud, Rule 9(b) applies, and the second amended complaint is required to plead the circumstances that allegedly constitute fraud "with particularity." Fed.R.Civ.P. 9(b); *Krys*, 749 F.3d at 129. To satisfy this requirement, a plaintiff alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata*, 723 F.3d at 197 (citations omitted). The fraud claims in the second amended complaint plainly do not meet this standard. Nor do they adduce "specific facts supporting a strong inference of fraud" such as would meet the exception to the particularity requirement where the facts are peculiarly

-10-

within the opposing party's knowledge.  *Wexner*, 902 F.2d at 172.  IPA's claim for breach of fiduciary duty based on fraud is dismissed on this ground.

The first cause of action suffers from a more fundamental defect, which warrants dismissal of all of IPA's breach of fiduciary claims, regardless of whether they are based on fraud (and thus subject to Rule 9(b)) or on some other ground.  As defendants argue, the second amended complaint fails to plead a breach of fiduciary duty because it does not allege how, and by what agreement or agreements, defendants owe IPA such a duty.  The elements of a claim for breach of fiduciary duty are "the existence of a fiduciary relationship, misconduct by the [defendant], and damages directly caused by the [defendant's] misconduct."  *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 549 (2d Cir. 2009).  The second amended complaint herein does not plead these elements, because it does not clearly identify what agreement or agreements give rise to a fiduciary duty running from defendants to IPA, and thus does not support a reasonable inference that defendants are liable for the misconduct alleged.  Paragraphs 12 and 13 of the second amended complaint allege:

> 12. By a series of agreements and amendments IPA succeeded to all of the rights of ELS as the grantor ("Grantor") in place of ELS making IPA the sole party entitled to the excess trust funds when they exceed 110% of the amount needed to fund obligations under the policies acquiring all right, title and interest in the excess trust funds of Trusts 1, 2 and 3 from ELS. HSBC Bank in New York became sole custodial trustee of these trusts. Any funds in trust which exceed 110% of the actual amount needed to fund ELS's obligations under the policies belong to IPA. Under the trusts, IPA was given standing to enforce the terms of the trusts. Under the trusts ICA had a continuing fiduciary obligation to utilize the trust funds solely for the purpose of providing collateral for ELS's obligations to reimburse ICA for unreimbursed deductible obligation with the balance of the excess trust funds to be paid to IPA because all funds in excess of the 110% belong to IPA.
>
> 13. Trusts 1, 2, and 3 were continued with HSBC Bank in New York on March 9, 2007, February 28, 2007 and March 5, 2007, respectively.  Trusts

-11-

> 1, 2 and 3, set forth at paragraphs 9, 10 and 11 hereof have been amalgamated and referred to hereunder as the "Trust". The Trust and the Policies were and are an insurance contract in which IPA has standing to enforce and audit under the terms of the Trust....

The conclusory assertion that IPA's rights and defendants' obligations arise from "a series of agreements and amendments" plainly fails to plead a specific agreement or agreements giving rise to fiduciary obligations running from defendants to IPA. Likewise, the allegations that "Trusts 1, 2 and 3, set forth at paragraphs 9, 10 and 11 hereof have been amalgamated and [are] referred to hereunder as the 'Trust'" and that Trusts 1, 2, and 3 were "continued" with HSBC Bank in New York on March 9, 2007, February 28, 2007 and March 5, 2007 do not plead the existence of such an agreement or agreements.

In opposition to the motion, James M. Kernan, owner of IPA, submits an affidavit referring to documents attached to an affidavit from Kevin Misiaszek, a Vice-President of IPA. The Court summarizes these attachments – which comprise 183 pages on the docket – as follows:

- Exhibit A is a Trust Agreement dated November 22, 2005 among IPA as grantor, ICA as beneficiary, and HSBC as trustee. This agreement is not mentioned in the second amended complaint. ELS is not a party to this agreement, and thus it is plainly not the same instrument as Trust 1 cited in the second amended complaint as follows: "Effective November 22, 2005 IPA entered into a certain trust agreement ("Trust l") with Employee Leasing Solutions, Inc. ("ELS") and ICA under which ELS as insured and IPA as grantor funded the trust by depositing funds $5,075,006.00 to be held by HSBC Bank[.]"

- Exhibits B and C are insurance policies issued to ELS by ICA during 2005 and 2006. These do not bear directly on the issue of what agreement or agreements give rise to ICA's alleged obligations to IPA.

- Exhibit D is a Trust Agreement dated December 16, 2005 among ELS as grantor, ICA as beneficiary, and Gold Bank as trustee. It appears to be the "Trust 2" cited in the second amended complaint.

-12-

- Exhibit E is a Trust Agreement dated August 29, 2006 among ELS as grantor, ICA as beneficiary, and Wachovia Bank as trustee. It appears to be the "Trust 3" cited in the second amended complaint.

- Exhibit F is an agreement dated December 31, 2006 headed "IPA Assumption & Assignment." Although it has a signature line for a representative of ELS, it is executed only by Kernan as President of both IPA and ICA. It is not cited in the second amended complaint.

- Exhibits G, H, and I are three Trust Agreements dated January 20, 2007 among ICA as grantor, ICA as beneficiary, and HSBC as trustee. Based on the discrepancies in the dates, these three Trust agreements do not appear to be the same as the agreements referred to in the second amended complaint, which states: "Trusts 1, 2, and 3 were continued with HSBC Bank in New York on March 9, 2007, February 28, 2007 and March 5, 2007, respectively."[3]

Presumably, plaintiff wishes the Court to view the Misiaszek attachments as incorporated in and/or integral to the second amended complaint, *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991), although they were not attached thereto. Exhibits A, F, G, H, and I are not, however, even cited in the second amended complaint. Consideration of exhibits D and E, which appear to be the documents cited in the second amended complaint as Trusts 2 and 3, does not cure the failure of the second amended complaint to specify the source of the contractual rights on which plaintiff relies.

Plaintiff's Memorandum of Law in opposition to this motion does not clarify which documents plaintiff is relying on or how they support the claims it asserts. Rather, plaintiff argues that "[t]he agreements speak for themselves and by their terms establish" IPA's "clearly alleged reversionary right to the trust corpus," and further that "it is sufficient at this stage for IPA to allege, as it does, that it succeeds to the rights of ELS pursuant to the terms of these

---

[3] Exhibit I bears a date stamp of March 5, 2007 and thus may be the "continuation" of Exhibit E.

agreements." The Court rejects this argument. The documents cited in the second amended complaint do not "by their terms" establish the rights IPA relies on therein. Nor is it "sufficient" for IPA to allege that it "succeeds to the rights of ELS pursuant to the terms of these agreements" where IPA does not state which agreements it means; as noted, the second amended complaint refers to documents not attached to the Misiaszek affidavit, and the Misiaszek attachments include documents not cited in the second amended complaint. The second amended complaint does not give defendants "fair notice" of the grounds upon which the breach of fiduciary claim rests. *Twombly*, 550 U.S. at 555. Obviously, defendants cannot defend a breach of fiduciary duty claim if they are not given notice of the agreement or agreements giving rise to their alleged duty.

The second amended complaint does not identify the agreement or agreements that are the source of the rights on which IPA relies in the first cause of action, and thus does not support a reasonable inference that defendants are liable for the misconduct alleged. Therefore, it does not plead enough facts to state breach of fiduciary duty claim that is plausible on its face. The first cause of action is dismissed as to all defendants for failure to state a claim.

**Second Cause of Action**

The second cause of action for fraud under section 349 of the New York General Business Law alleges that the individual defendants falsified records of ICA and the Trust "in order to conceal and cover-up the wrongful taking and conversion of assets of ICA Custody and the Trust which were under its control," and that they participated and conspired to participate in the "wrongful transfer of Trust assets of the Trust and ICA Custody with full knowledge that business records of defendant ICA were being falsified and falsely reported" by the individual defendants.

Having failed to plead facts specifying the agreement or agreements that are the source of the rights on which IPA relies, as discussed above, the second amended complaint does not support a reasonable inference that defendants are liable for the misconduct alleged in the second cause of action.

In addition, the second amended complaint does not plead a cause of action under section 349 because it does not plead consumer-oriented conduct. Section 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]" The gravamen of a section 349 complaint "must be consumer injury or harm to the public interest." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (internal citation and quotation marks omitted). Private contract disputes, unique to the parties, are not within its reach. *See Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). IPA does not plead facts supporting the conclusion that defendants' committed acts directed at consumers or otherwise harming the public interest. The second cause of action is dismissed as against all defendants.

**Third Cause of Action**

The third cause of action is for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c),(d). IPA alleges that the individual defendants conducted and participated in conducting the affairs of ICA through insurance fraud, mail fraud (by filing false reports to conceal their conversion of Trust and ICA assets for their wrongful personal enrichment), and wire fraud (by electronically transferring funds and assets in ICA's name and account, all of which they knew or should have known were illegally gained from diverted and converted trust funds and custodial assets for their wrongful personal enrichment).

-15-

*See* 18 U.S.C. § 1341.  IPA further alleges that the individual defendants transferred or caused to be transferred in interstate commerce ICA's money and assets "knowing the funds so obtained had been converted, stolen and taken by fraud and/or falsified records."  The individual defendants' "repeated commission of insurance, mail, and wire fraud" allegedly constitutes a pattern of racketeering activity.  Thus, plaintiff claims, the individual defendants conducted or participated in conducting the affairs of defendant ICA, an enterprise, through a pattern of racketeering activity, 18 U.S.C. § 1962(c), and conspired to do so, 18 U.S.C. § 1962(d).

The second amended complaint does not plead insurance fraud, mail fraud, or wire fraud with sufficient particularity to satisfy Rule 9(b)'s heightened pleading standard, which applies to RICO claims for which fraud is the predicate illegal act.  *See Moore v. PaineWebber*, 189 F.3d 165, 172 (2d Cir. 1999).  Contrary to plaintiff's contention, this heightened pleading standard also applies to fraud allegations underlying RICO conspiracy claims.  *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("[Plaintiff's] pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a)" (emphasis added)).  Further, having failed to plead facts specifying the agreement or agreements that are the source of defendants' alleged obligations underlying the fraud claims, as discussed above, the second amended complaint does not support a reasonable inference that defendants are liable for the misconduct alleged in the third cause of action.

The Court notes also that the second amended complaint appears to assert the RICO cause of action solely against the individual defendants.  If, however, it is read to include a claim against ICA on the ground that it is a RICO "person," the claim would not meet the requirement to plead an enterprise distinct from the persons who participate in the enterprise.  *See Riverwoods*

-16-

*Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343 (2d Cir. 1994). The third cause of action is dismissed as against all defendants.

**Fourth Cause of Action**

The fourth cause of action, for aiding and abetting fraud, alleges:

> ... [T]he Personal Defendants by misrepresenting the true nature of the withdrawal of funds from the Trust and ICA Custody concealed their illegal fraudulent acts and schemes by defrauding of plaintiff through active participation, aid, encouragement or ratification of the conduct of ICA which they did having known of that fraud or if they did not know of the fraud it was because of their gross dereliction of their duties and responsibilities as officers and directors of ICA.

The fourth cause of action avers that each individual defendant "acted in concert and deliberately aided and abetted each other in the conduct of the illegal activities and schemes described above." The second amended complaint does not state a cause of action based on aiding and abetting fraud because it does not plead the circumstances of the alleged fraud with the particularity required by Rule 9(b). *See id*. at 293; *Krys*, 749 F.3d at 129. Further, plaintiff has not pleaded the elements of a cause of action for aiding and abetting fraud, *see Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (stating that to establish liability for aiding and abetting fraud, plaintiff must show the existence of a fraud; defendant's knowledge of the fraud; and that defendant provided substantial assistance to advance the fraud's commission). And, having failed to plead facts specifying the agreement or agreements that are the source of defendants' alleged obligations underlying the fraud claims, as discussed above, the second amended complaint does not support a reasonable inference that defendants are liable for the misconduct alleged in the fourth cause of action. The fourth cause of action is dismissed as against all defendants.

**Fifth Cause of Action**

The fifth cause of action for an accounting alleges that defendants "violated their duties with regard to the administration of the Trust and ICA Custody and are legally obligated to account for all the funds held in trust"; that defendants as fiduciaries are required to account to the plaintiff for the conversion of any such funds and should be compelled to restore all those funds which rightfully belong to the Plaintiff; and that the foregoing diversion of Trust Assets and Custody Assets "has occurred by and large because IPA has been deprived of its contractual rights to audit the books and accounts of the Trust and activities of ICA related thereto."  Having found that plaintiff has not alleged the source of the rights upon which it relies, including the right to an accounting, the Court dismisses this cause of action as to all defendants.

**Leave to Replead; Discovery**

Plaintiff requests leave to replead.  Motions to amend should be granted freely in the interests of justice.  *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013).  In the instant case, however, plaintiff has already submitted two amended complaints, one in state court and one here.  Plaintiff prepared the second amended complaint with the benefit of defendants' initial dismissal motion (Dkt. No. 6), which apprised plaintiff of the defects upon which the Court now bases its dismissal.  In opposition to the dismissal motion now before the Court, plaintiff does not "provide a specific explanation of the manner in which [it] propose[s] to cure the defects in [its] complaint[.]"  *Campo v. Sears Holdings Corp.*, 371 Fed.Appx. 212, 218 (2d Cir. 2010).  To the contrary, the Kernan affidavit, the Misiaszek affidavit, and the attachments thereto add to the uncertainty regarding the source of the rights and obligations upon which plaintiff relies.  Further, IPA has not persuaded the Court that it needs an opportunity for discovery with respect to the source of the rights in issue.  There is no indication that the documentary support for

plaintiff's rights under the alleged Trust are peculiarly within defendants' knowledge; indeed, Kernan signed Trusts 2 and 3 and all three of the January 20, 2007 Trusts as President of defendant ICA, and he signed the December 31, 2006 document as President of both IPA and ICA.

Plaintiff also requests discovery to amplify its fraud claims. As noted, where facts are "peculiarly within the opposing party's knowledge," fraud allegations may be based on information and belief, but the complaint must "adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Wexner*, 902 F.2d at 172. Here, plaintiff has not adduced such facts; rather it adduces only conclusory generalizations. "Rule 9(b) will have failed in its purpose if conclusory generalizations ... will permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some sort of wrongdoing or of obtaining a substantial settlement." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 116 (2d Cir. 1982). There is no basis to delay dismissal of the second amended complaint in order to allow discovery on the fraud claims.

Accordingly, the second amended complaint is dismissed with prejudice and without leave to replead.

## CONCLUSION

It is therefore

ORDERED that defendants' motion (Dkt. No. 25) to dismiss the second amended complaint is granted in its entirety, and the second amended complaint (Dkt. No. 24) is dismissed with prejudice and without leave to replead; and it is further

ORDERED that plaintiff's cross motion (Dkt. No. 34) for an extension of time to file a

civil RICO statement pursuant to General Order #14 is denied; and it is further

ORDERED that the case is closed.   The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

Date:   September 24, 2014
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge